**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

CARLOS HERNANDEZ,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

Defendant.

**Case No. 1:15-cv-00110-DAD-GSA**

**FINDINGS AND RECOMMENDATIONS RECOMMENDING ENTRY OF JUDGMENT IN FAVOR OF CARLOS HERNANDEZ AND AGAINST NANCY A. BERRYHILL**

## I. INTRODUCTION

Plaintiff, Carlos Hernandez ("Plaintiff"), representing himself *pro se*, seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge. A review of the briefs and the administrative record reveals that the ALJ's decision is not supported by substantial evidence. Therefore, it is recommended that Plaintiff's appeal be GRANTED IN PART.

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

## II. BACKGROUND AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for DIB and SSI in September 2011, alleging disability beginning April 10, 2011, due to knee pain and injuries, hypertension and a weak back. AR 34; 150-156; 157-161; 195. His applications were denied initially and on reconsideration. AR 34; 96-106. Plaintiff requested a hearing before an administrative law judge ("ALJ"). AR 111-112. ALJ Timothy Snelling ("ALJ") conducted a hearing on April 11, 2013. AR 50-75. Plaintiff testified and was represented by Terri Issac, Esq. The ALJ published an unfavorable decision on June 14, 2013. AR 34-42. Plaintiff filed two appeals and the Appeals Council denied both appeals, rendering the ALJ's order the final decision of the Commissioner.[3] AR 1-3; 14-20. 42 U.S.C. §§ 405(g), 1383(c)(3). AR 20-31.

After filing a complaint in this Court, Plaintiff filed a letter outlining his arguments noting there were additional documents relevant to his case.[4] (Doc. 37). In response, the Court issued an order giving Plaintiff the standard for filing this additional evidence, as well as guidelines he should consider when filing his brief. (Doc. 38). Plaintiff filed eight pages of supplemental briefing and over 303 pages of additional medical documents. (Doc. 41). The Commissioner filed her opposition. (Doc. 43). Plaintiff filed a response. (Doc. 44). The Court has reviewed all of these documents.

## III. ISSUES PRESENTED

Plaintiff argues that he is disabled because he was exposed to toxic ink while working as a silk screen printer in 2004. He contends that he suffers from neuropathy including chronic tingling and pain in his head and extremities, persistent heart palpitations, high blood pressure,

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Plaintiff submitted additional documentation during the appeals process which the Appeals Council considered and marked as Exhibits 16 E, 17E, 18E, and 20 F. AR 18; 249-273; 502-504. These documents were considered by this Court as part of this appeal. 20 C.F.R. § 404.970(b); *Burnell v. Colvin*, 775 F. 3d 1133, 1136 (9th Cir. 2014) quoting *Brewes v. Commissioner of Social Sec. Admin*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.")

[4] Plaintiff alleged that there were records missing from the administrative record including an opinion from Dr. Parisha, his neurologist, dated February 26, 2014, as well as a disability impairment questionnaire and other medical records from 2012-2014 from Dr. Westrup, his treating physician. (Doc. 37, pg. 2-3).

anxiety, chest pains, and panic attacks. (Doc. 37, pgs. 2-3; Doc. 41, pgs. 1-4). He alleges the ALJ erred when finding that he was not disabled because the ALJ misinterpreted the medical evidence and improperly found that he was not credible during his hearing. (Docs. 41, pgs. 4-8; Doc. 44, pgs. 1-4). It appears he is asking that the Court award him disability benefits.[5] The Commissioner argues that the ALJ's assessment of the medical evidence and his credibility determination were proper and are supported by substantial evidence. Accordingly, the ALJ's disability determination should not be disturbed. (Doc. 43, pgs. 7-18).

## IV. PLAINTIFF'S HEARING TESTIMONY

Plaintiff was fifty-two years old at the time of the hearing. He graduated high school and completed about a year and a half of college. AR 51; 53. He has worked all of his life. Most recently (from 1983 until 2009), he was employed as a screen printer installing graphics on cars. AR 51-54. Plaintiff testified that in 2004, the chemicals he was using at work changed the way his nervous system was functioning. Plaintiff stopped working in 2009 when he was laid off after experiencing problems with high blood pressure which caused him to miss work. AR 56-57. He continues to suffer from high blood pressure which he has not been able to get under control even with medication. AR 56-58. He has not looked for work after being laid off because he feels "horrible every day" and he suffers from anxiety, which has gotten worse over the years. AR 65.

After Plaintiff was laid off, he supported himself with unemployment benefits for over a year. AR 58. After those benefits stopped, he moved in with his nephew but is still responsible for buying his own food. He also receives food stamps but was never able to work due to his health issues, which includes anxiety, gastrointestinal problems, and a past history of alcohol abuse. AR 60-61. When he experiences anxiety, his chest feels tight and he is unable to breathe. AR 60-61. He can't take anxiety medications because the drugs his doctor prescribed made him dizzy. AR

[5] Plaintiff is advised that the diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Furthermore, a medical opinion must include judgments about the nature and severity of your impairments including a diagnosis, prognosis, and a statement about what the claimant can still do despite the impairments. *See* 20 CFR §§ 416.927(a)(1) , 404.1527(a)(1). The bulk of Plaintiff's supplemental briefing and the additional evidence sets forth a history of his impairments and treatment, as well as arguments about why he is unable to work. (Doc. 41). The Court has liberally construed Plaintiff's filings and interprets his pleadings to include the above arguments. See, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers.")

61-62. Some days he is unable to get out of bed because his anxiety has gotten too severe. He also suffers from knee pain which prevents him from standing or walking for more than a half hour. AR 67. Plaintiff is also unable to sit for more than approximately thirty to forty minutes because of his back. AR 68. He has not lifted anything recently but thinks he could lift between ten and twenty pounds. AR 68.

During the day, Plaintiff is able to get out of bed and eat breakfast if he does not suffer from an anxiety attack. AR 68. Sometimes after getting out of bed, he suffers from an anxiety attack which is the main reason he is unable to work. AR 68-69. He suffers from these every day, sometimes more than once a day and they can last up to four hours. AR 69. Sometimes, the attacks never go away. When they occur, he is unable to breathe and has pressure in his chest. AR 69. He is unable to drive because he had an accident and now has a phobia about driving. AR 69. He gets around either by using public transportation, or by getting rides from his girlfriend. AR 69. He also suffers from memory loss, so his nephew and girlfriend have to remind him when to take his medications. AR 70.

**V. THE MEDICAL RECORD AT THE TIME OF THE ADMINSTRATIVE HEARING**

Plaintiff was seen at Kaiser Permanente in July 2009 for a physical examination complaining of tightness in his throat and dizziness. AR 274-285. His blood pressure was slightly elevated but he reported it was under control. AR 277. In addition to hypertension, it was noted he suffered from prediabetes, high cholesterol, and insomnia. AR 277; 281. Blood reports also revealed Plaintiff had low potassium levels. AR 40; 282.

Plaintiff was treated at Golden Valley Health Center from January 2010 through April 2011. AR 40; 292-306. He began treatment there after losing his health insurance and complained of fatigue and chest pain on exertion. He was diagnosed with chronic hypertension and benign prostatic hypertrophy (enlargement of the prostate). AR 299. By May 2010, he had no further fatigue and experienced only occasional periods of tachycardia (rapid heart rate). AR 297. In April 2011, he was seen for a refill of his blood pressure medication and for blood work. AR 292-306. He denied chest pain, shortness of breath, palpitations, depression, anhedonia, disturbance of appetite, but acknowledged that he had some trouble sleeping and experienced some fatigue.

AR 40; 295. He presented with euthymic mood and appropriate affect. AR 40; 295.

On December 12, 2011, state agency consultative examiner Roger Wagner, M.D., examined Plaintiff. AR 40-41, 322-26. At the time of the examination, Plaintiff complained of knee pain, with more pain in his left knee than his right; low back pain; and high blood pressure. Dr. Wagner observed that Plaintiff was able to easily move about the exam room and appeared "quite limber" in performing such activities as bringing his ankles to the knees bilaterally. AR 40; 323. The doctor noted normal gait at a brisk pace and no complaints of pain on walking or sitting. AR 40; 323. He reported negative straight leg raising tests bilaterally, which led him to describe Plaintiff's low back pain as "benign[,]" and 5/5 motor strength in the upper and lower extremities. AR 40; 325. Dr. Wagner also described Plaintiff's knee condition as "relatively benign" given the lack of any "signs of any severe problems." AR 40; 325. Finally, with respect to Plaintiff's hypertension, Dr. Wagner opined that it was "well controlled. . . with no obvious end organ damage." AR 40; 325. Dr. Wagner opined Plaintiff could stand and walk up to six hours; could lift and carry fifty pounds occasionally and twenty-five pounds frequently; could occasionally climb stairs; and could rarely climb and balance on ladders or scaffolds. AR 325-326.

In March 2012, x-rays of Plaintiff's bilateral knees showed no abnormalities. AR 41; 368-369. On June 23, 2012, Plaintiff went to the emergency room complaining of numbness and tingling across his chest for the last few weeks, but denied symptoms at the time of the exam. AR 41; 355. After an unremarkable exam, including a negative chest x-ray and normal EKG[6] (AR 348; 356-357), Plaintiff was diagnosed with hypokalemia (low potassium), discharged from the hospital, and prescribed potassium chloride. AR 40; 347; 357-358.

On July 5, 2012, Plaintiff followed up with his treatment providers and reported that he felt better but complained of tightness in the upper back, shoulder and neck. He attributed these symptoms to nerve damage.[7] AR 41; 370. At that time, Plaintiff exhibited no psychiatric deficits. AR 41; 371.

---

[6] An EKG, sometimes referred to as a ECG is an electrocardiogram that measures the electrical activity of the heartbeat.

[7] It is unclear from the records where this treatment occurred. AR 370-371.

On July 18, 2012, Plaintiff returned to the emergency room complaining of palpitations and dizziness after taking two different diuretics, drinking too much caffeine, and not taking enough potassium. AR 41; 343-345. Plaintiff was discharged after a few hours. He was diagnosed with palpitations after his condition had improved. AR 345. On July 20, 2012, Plaintiff initiated treatment at the county Health Services Agency with Dr. Thomas Wenstrup, M.D., and complained of the effects of past chemical exposure. AR 41; 471. Blood work taken in August and September 2012 revealed low potassium levels. AR 446-447; 451.

Plaintiff returned to the Health Services Agency on September 26, 2012, Plaintiff again described "nerve damage" due to chemical exposure. He complained of "attacks" of tingling all over but the symptoms centered mainly around his chest. Later in the appointment, he denied anxiety. AR 41; 465.

On September 29, 2012, Plaintiff returned to the emergency room seeking treatment for intermittent chest pain over the last two weeks with shortness of breath, sweating, nausea, palpitations, left arm numbness, and anxiety. AR 41; 382; 431. An ECG and chest x-ray were all normal. AR 384; 387-390. Plaintiff was discharged the next day, diagnosed with chest pain - likely secondary to anxiety, hypokalemia and hyperlipidemia (an abnormally high concentration of lipids in the blood). AR 41, 404; 425. He was started on Zoloft and Lipitor. AR 425.

After his release from the emergency room, Plaintiff returned to the Health Services Agency on October 4, 2012. He reported he had had anxiety for years and was worse on Zoloft, so the treatment provider prescribed Klonopin (Clonazepam) instead. AR 41; 462.

On October 15, 2012, Plaintiff returned to the emergency room complaining that his heart was racing and anxiety. AR 41; 414. He reported that he stopped taking the Zoloft and Lipitor.[8] AR 416. It was noted that his potassium levels were slightly low. AR 416. Plaintiff was discharged from the hospital the same day with a diagnosis of palpitations and adjustment disorder with anxiety. AR 41; 416. In November 2012, no significant bradycardia or tachycardia was confirmed. AR 41; 435.

On November 5, 2012, Plaintiff began seeing Darlene Thompson, a licensed social worker

---

[8] Plaintiff reported he had stopped taking the Lipitor because it made his blood pressure go up. AR 414.

at the Health Services Agency, for panic attacks. During this time, he reported that the Klonopin was helping his symptoms. AR 41; 458. At the next appointment in December 2012, Plaintiff reported that he had never started Paxil, as recommended by his doctor, because he worried it could make him psychotic. AR 41; 457. In January 2013, Plaintiff continued to refuse to take Paxil because of the side effects. AR 41; 453. Ms. Thompson noted that Plaintiff was "highly anxious/worried about his health and overly focused on it." AR 41; 452; 453.

On February 27, 2013, neurologist Harish Porecha, M.D. performed a neurological examination which was normal, except for some shaking in the hands. He diagnosed Plaintiff with anxiety.AR 42; 474-475. Similarly, EEG and EMG[9] reports in March and April 2013 were largely normal, except for borderline right medium neuropathy at the wrist. AR 42; 498-501.

## VI. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
>
> 42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20

[9] An EMG is an electromyogram test used to record the electrical activity of muscles.

C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 32-47. In particular, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014, and he had not engaged in substantial gainful activity since April 10, 2011, the alleged disability onset date. AR 36. Further, the ALJ identified gastroesophageal reflux disease, anemia, right carpel tunnel syndrome, anxiety, generalized anxiety disorder, panic disorder with agoraphobia, hypertension, a history of palpitations, chest pain shortness of breath, and a history of alcohol abuse as severe impairments. AR 36. Nonetheless, the ALJ determined that Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 36-38.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform a range of medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c). Specifically, he found Plaintiff could lift and carry fifty pounds occasionally and twenty five pounds frequently; he was able to stand and/or walk up to six hours and sit for six hours in an eight hour day; he could occasionally climb ramps and stairs, stoop, and crouch; however, he could have no more than occasional face-to-face interactions with the general public, and rarely (no more than twenty percent of the workday) climb ladders, ropes, or scaffolds. Additionally, Plaintiff must avoid concentrated exposure *i.e*. intense, continuous, intractable, unremitting exposure, to hazards and pulmonary irritants. AR 38. Given the above RFC, the ALJ determined Plaintiff could perform his past relevant work as a silk screen printer and that he was not disabled

as defined by the Social Security Act. AR 42.

**VII. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

**VIII. DISCUSSION**

**A. The ALJ's Assessment of Plaintiff's Assessment of the Medical Evidence is Not Supported by Substantial Evidence.**

Plaintiff argues that the ALJ failed to properly assess the medical evidence and improperly found him not credible. (Docs. 41, pgs. 1-8). In support of this argument, Plaintiff has submitted over 300 pages of additional medical records. (Doc. 41, pgs. 9-311). The Commissioner contends that the ALJ properly assessed the medical evidence and gave clear and convincing reasons for finding the Plaintiff not credible. Accordingly, the ALJ's decision is supported by substantial evidence. (Doc. 43, pgs. 7-18).

A review of the record reveals that the ALJ's decision is not supported by substantial evidence. While the ALJ properly assessed the medical evidence related to Plaintiff's physical impairments, he made findings regarding Plaintiff's anxiety without obtaining a psychological assessment, which was improper.

1. *Plaintiff's Physical Impairments*

A review of the record reveals that the ALJ thoroughly summarized Plaintiff's medical record. AR 38-42. He evaluated all of Plaintiff's physical impairments and found that Plaintiff's gastroesophageal reflux disease, anemia, right carpal tunnel syndrome, hypertension, shortness of

breath, and heart palpitations were severe impairments. AR 36. However, he found that in light of Dr. Wagner's assessment and other test results, that Plaintiff had the RFC to perform medium work, but he could only occasionally climb ramps and stairs, stoop, and crouch, and he could rarely climb ladders, ropes or scaffolds.[10] AR 38-38-42.

Specifically, when formulating Plaintiff's RFC, the ALJ noted that nothing in Plaintiff's visit to his health care providers in April 2011 supported his allegations of fatigue, chest pain, shortness of breath or knee pain. AR 40; 292-306. He also gave Dr. Wagner's assessment (that Plaintiff could perform medium work) substantial weight because the only physical impairment exhibited during that exam was Plaintiff's hypertension which the doctor determined was under control. AR 40; 325. Relatedly, the ALJ reasoned that Plaintiff's hypertension could reasonably limit his ability to do heavy work, so he limited Plaintiff to medium work and imposed the additional limitations outlined above. In doing so, the ALJ noted that Plaintiff's trips to the emergency rooms in 2012 for heart palpitations, numbness, and tingling in his extremities only resulted in treatment to address low potassium and that he was released shortly afterward. AR 41; 347; 343-345; 357-358; 382; 416; 43; 446-447; 451. Similarly, the ALJ found that tests related to his physical symptoms were normal. AR 40-42; AR 368-369 (x-rays of both knees showing no abnormalities); AR 384; 387-390 (ECG and chest x-ray were normal); AR 435 (no significant bradycardia or tachycardia was confirmed); AR 474 (largely normal neurological exam); AR 498-501 (EEG and EMG were largely normal except for borderline right medium neuropathy at the wrist). Given the above, the ALJ properly assessed Plaintiff's physical impairments.

2. *Plaintiff's Psychological Impairments*

Although the ALJ's properly assessed the medical evidence with regard to Plaintiff's physical limitations, his RFC findings related to his anxiety disorders are not supported by substantial evidence. In the order, the ALJ correctly summarized the medical record with regard to Plaintiff's anxiety. He noted that after Plaintiff presented to the emergency room several times with heart palpitations, he was diagnosed with an anxiety. AR 404; 416; 425. After one of these

---

[10] The ALJ's imposed other limitations but those will be discussed in the next section as these limitations relate to Plaintiff's psychological impairments.

visits, Plaintiff was prescribed Klonopin by his primary care doctor to treat his anxiety. AR 462. The ALJ also correctly found that Plaintiff was seen by a social worker from November 2012 through January 2013, for panic attacks and it was noted Plaintiff was highly anxious/worried about his health and was overly focused on it. AR 41; 452-453. Finally, the ALJ correctly noted that after a neurological evaluation revealed normal findings, the neurologist diagnosed Plaintiff with anxiety. AR 42; 474-475.

As part of his analysis, the ALJ found Plaintiff's anxiety, generalized anxiety disorder, panic disorder with agoraphobia were severe impairments. AR 36. He considered whether Plaintiff met the listing requirements under 12.04 (for affective disorders) and 12.06 (for anxiety disorders). He noted that Plaintiff had moderate difficulties in social functioning, and only mild difficulties in activities of daily living, and in concentration, persistence, or pace. AR 37-38. As a result, he did not meet the criteria for paragraph B of the listing impairments. AR 37-38. Similarly, because Plaintiff did not have a complete inability to function independently outside of the house, he did not meet paragraph C of 12.06. AR 37-38. To address Plaintiff's anxiety impairments, the ALJ formulated a RFC that limited Plaintiff to only occasional face-to-face interactions with the general public and required that Plaintiff should avoid concentrated exposure (*i.e.* intense, continuous, intractable, unremitting exposure) to hazards and pulmonary irritants.[11]

A review of the record reveals that although the ALJ accurately summarized the medical record, the formulation of the limitations in the RFC for Plaintiff's anxiety disorders are not supported by substantial evidence because the ALJ devised these limitations without obtaining a psychological evaluation that assessed the severity of Plaintiff's anxiety. The Court is aware that an RFC is not a medical opinion but is a legal decision that is expressly reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d) (RFC is not a medical opinion), 404.1546(c), 416.946(d) (identifying the ALJ as responsible for determining RFC). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). However, an ALJ

[11] It is unclear whether this environmental limitation was formulated to address Plaintiff's anxiety as the ALJ did not articulate this in this decision. However, given the facts of this case, this Court presumes this limitation may have been formulated to address Plaintiff's psychological condition in part.

is not allowed to use his own medical judgment in lieu of that of a medical expert. *Gonzalez Perez v. Secretary of Health & Human Serv.*, 812 F.2d 747, 749 (1st Cir. 1987); *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Here, there is no psychological evaluation from a state agency doctor or treating physician that completed a functional assessment of Plaintiff's psychological condition or his limitations. Instead, the ALJ assessed Plaintiff's psychological impairment using his lay opinion despite the fact that several doctors have diagnosed him with anxiety which is contributing to his physical impairments. AR 37-42; 404; 416; 425; 474-475. This is troubling because Plaintiff testified that his anxiety is the main reason he is unable to work. AR 68-69. He indicated that he suffers from anxiety every day, and that sometimes he is unable to get out bed because his anxiety is too severe. AR 67. On days that he is able to get out of bed, his anxiety symptoms occur several times a day, and sometimes they can last the entire day. AR 68-69. When this occurs, he is unable to breathe and he has tightness and pressure in his chest. AR 69.

The Commissioner argues that the ALJ's assessment of the medical evidence is proper because Plaintiff reported that Klonopin was helping his symptoms, he refused to take Paxil, and he was "overly focused on his physical symptoms" which undermined his credibility. (Doc. 43, pgs. 9-13). However, the ALJ never obtained any psychological evaluation that assessed the level of severity of Plaintiff's impairment that would allow him to accurately evaluate Plaintiff's credibility, or enable him to identify limitations for a RFC.[12]

The Court recognizes that it is Plaintiff's burden to produce full and complete medical records, not the Commissioner's. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). However, a RFC is all a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545, 416.945. When the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of

[12] In the decision, the ALJ makes reference to a November 5, 2012 psychological assessment of Plaintiff's panic attacks. AR 41; 452-453; 457-458. However, a review of the group of documents the ALJ references is not a psychological examination but are only treatment notes from a social worker who was treating Plaintiff for his anxiety. A licensed clinical social worker is not an "acceptable medical source." 20 C.F.R. §§ 404.1513(a), 416.913(a). Instead, she is considered to be an "other source" whose opinion the ALJ may give less weight than that of an acceptable medical source. 20 C.F.R. §§ 404.1513(d), 416.913(d); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). Moreover, these notes do not provide an assessment of the severity of Plaintiff's anxiety, or a functional assessment of his limitations given this impairment.

the evidence, the ALJ has a duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). Here, the ALJ had a duty to obtain a psychological assessment because the record was inadequate to determine the scope of Plaintiff's impairment. Instead, the ALJ merely summarized the administrative record related to Plaintiff's anxiety disorders, performed analysis of the listed impairments, and formulated an RFC without any medical opinion as a basis for his findings. This constitutes error.

**B. Remand for Further Proceedings**

The Court must determine whether this action should be remanded to the Commissioner with instructions to immediately award benefits, or whether this action should be remanded for further administrative proceedings. Remand for further proceedings is appropriate when an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Garrison v. Colvin*, 759 F. 3d 995, 1021 (9th Cir. 2014). Conversely, a court should remand with for an award of benefits when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* at 1020. Even if all three of these criteria are met, the Court can retain flexibility in determining an appropriate remedy. *Brown-Hunter v. Colvin*, 806 F. 3d 487, 495 (9th Cir. 2015).

In this case, given the need for a psychological assessment, the Court finds that remand for further administrative proceedings is necessary to further develop the record. The ALJ shall then formulate a RFC that encompasses any limitation that is supported by substantial evidence. Because the Court remands this case for psychological assessment, the Court dispenses with an exhaustive analysis of the ALJ's assessment of Plaintiff's credibility, as credibility is inescapably linked to conclusions regarding the medical evidence. 20 C.F.R. §§ 416.929, 404.1529. As such, a re-evaluation of the medical evidence may impact the ALJ's findings as to Plaintiff's credibility.

Relatedly, the Court has reviewed the additional medical documents Plaintiff submitted as part of this appeal. (Doc. 41, 9-311). These documents consist of pharmaceutical records (Doc.

41, pgs. 10-22); recent rehabilitation efforts (Doc. 41, pgs. 25-32); treatment notes from Specialty Clinics and other treatment providers (Doc. 41, pgs. 33-88; 148; 161-162); treatment notes from Dr. Westrup (Doc. 41, pgs. 89-119); lab and imaging results (Doc. 41, pgs. 83; 139-143; 166-170; 211-212; 222-243; 250-255; 291-311); notes from the McHenry Medical Offices (Doc. 41, pgs.145-148; 152-159); notes from Doctor's Medical Center (Doc. 41, pgs. 178-210); notes from Sutter Health (Doc. 41, pgs. 214-221); emergency room records. (Doc. 41, pgs. 245-249; 256-272; 294-311); and a psychiatric assessment from Dr. Fukui dated May 19, 2014 (Doc. 41, pgs. 307-311). In light of this Court's decision that the ALJ's findings were not supported by substantial evidence, it need not address the additional evidence submitted by the Plaintiff. The Court, however, has reviewed the new evidence presented to the extent that it has determined that the additional documentation is insufficient to award Plaintiff benefits given the need for further development of the record. On remand, because Plaintiff's psychological impairments are closely related to his physical conditions, he shall be permitted to submit additional evidence regarding his physical and psychological impairments so that the ALJ can adequately determine if Plaintiff meets the disability standard. Plaintiff is encouraged to seek the assistance of an attorney on remand as his case presents complex issues.

## IX. CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's determination that Plaintiff is not disabled under the Social Security Act is not supported by substantial evidence. Accordingly, it is RECOMMENDED that Plaintiff's appeal be GRANTED IN PART and the case be remanded to the Commissioner consistent with the directives outlined in this order. It is FURTHER RECOMMENDED that the Clerk of this Court be DIRECTED to enter judgment in favor of Carlos Hernandez, and against Plaintiff Nancy A. Berryhill, Commissioner of Social Security and to close this action.

These Findings and Recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code § 636(b)(1)(B). Within thirty (30) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court. Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's Findings and Recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C). Failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F. 3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan,* 923 F. 2d 1391, 1394 (9th Cir. 1991); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **July 20, 2017** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE